UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Artis Nelson,                                              Case No. 14-cv-2171 (PAM/HB)

            Plaintiff,

v.                                                     **MEMORANDUM AND ORDER**

Carolyn W. Colvin, Acting Commissioner
of Social Security,

            Defendant.
_____

This matter is before the Court on the parties' Motions for Summary Judgment. For the reasons that follow, the Court denies Nelson's Motion and grants the Commissioner's Motion.

**BACKGROUND**

Artis Nelson is seeking social-security disability benefits. When the administrative hearing in this case occurred, Nelson was 36 years old, weighed 185 pounds, and stood 5 feet, 6 inches tall. (Admin. R. (Docket No. 10) at 38.) He had completed high school, obtained an automotive training certificate, and worked as a bus driver, food worker, janitor, and snow shoveler. (Id. at 39, 274-75.) He most recently worked mowing lawns (id. at 225-27), but had not worked for about a year before the hearing because of persistent headaches and chronic pain (id. at 39-40). He was taking medications for depression, ADHD, headaches, his prostate, high blood pressure, and pain. (Id. at 41-42.)

On December 22, 2010, Nelson applied for disability insurance benefits and supplemental security income. (Id. at 210-24.) He alleged that he became disabled on October 15, 2005. (Id. at 268-69.) The Commissioner of Social Security denied his application initially (id. at 54-73), and on reconsideration (id. at 78-101). Nelson then requested a hearing before an administrative law judge (ALJ), which happened on January 7, 2013. (Id. at 120-21, 191-208.)

At the hearing, Nelson testified about his alleged disability, and specifically about the extent of his headaches. (Id. at 42-44.) He explained that he had been suffering daily headaches since he was in a car accident in 2011. (Id. at 42-43.) He visited several clinics and neurologists, but none were able to pinpoint the cause of the headaches or prescribe a course of treatment. (Id. at 43.) Most often, he would lie down and rest for relief. (Id.) Yet when the headaches were more intense, he would go to the emergency room and receive morphine to alleviate the pain. (Id. at 44.)

A vocational expert, Beverly Solyntjes, also testified at the hearing, and primarily to a hypothetical that the ALJ posed. (Id. at 45-47.) To assess whether Nelson could perform other jobs in the regional or national economy, the ALJ asked Solyntjes to "tak[e] such a person the same age, education, [and] work experience as [Nelson]" and "assume such a person with the residual functional capacity for at least medium work, subject to routine, repetitive three- to four-step tasks; brief and superficial contacts with coworkers and the public; and stressors limited to the repetitive work setting." (Id. at 45-46.) Solyntjes responded that such a person could not do Nelson's past work but could

find a position as an industrial cleaner, hand packager, or package sealer machine tender. (Id. at 46.)

On January 31, 2013, the ALJ affirmed the Commissioner's denial of Nelson's application. (Id. at 9-33.) Following the familiar five-step evaluation process, the ALJ decided that Nelson was not disabled between the alleged onset date and the date of his decision, and thus was not entitled to social-security disability benefits. (Id. at 12-24.) As relevant here, the ALJ determined that Nelson had the following severe impairments:

> major depressive disorder; attention-deficit/hyperactivity disorder; alcohol dependence in remission; anxiety disorder NOS; headaches associated with neck strain and minimal degenerative changes of the cervical spine; borderline intellectual functioning; pain disorder; status post video arthroscopy of January 23, 2012, right knee; and low back pain associated with degenerative disc disease of the lumbar spine.

(Id. at 14-15.) "After careful consideration of the entire record," the ALJ found that Nelson had the residual functional capacity to perform "medium work" subject to the following limitations:

> he is able to perform work that involves no more than routine, repetitive, 3-4 step tasks; he is able to perform work that involves stressors of the type found in at most a routine repetitive work setting; and he is able to perform work that involves no more than brief and superficial contact with coworkers and members of the public.

(Id. at 17-22.) And based on that residual functional capacity, as well as his age, education, and work experience, the ALJ concluded that Nelson could not perform any past relevant work but could perform other jobs existing in significant numbers in the national economy, like a cleaner, hand packager, or package sealer machine tender. (Id. at 22-24.)

Nelson next requested review of the ALJ's decision by the Appeals Council (id. at 7-8); the Appeals Council denied that request, making the ALJ's decision the Commissioner's final decision (id. at 3-6). He then filed a civil action in this Court, pursuing judicial review and reversal or remand of the Commissioner's decision. (Compl. (Docket No. 1).) The Commissioner answered and asked the Court to affirm her decision. (Ans. (Docket No. 9).)

Both parties now move for summary judgment.

**DISCUSSION**

The Court upholds the Commissioner's final decision to deny an application for social-security benefits if it is supported by substantial evidence in the record as a whole. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004). Substantial evidence is "less than a preponderance but is enough that a reasonable mind would find it adequate to support" the decision. Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In determining whether substantial evidence exists, the Court must "consider evidence that detracts from the . . . decision as well as evidence that supports it." Id. So long as substantial evidence supports the decision, the Court may not reverse it because substantial evidence would have supported a contrary outcome or because the Court would have decided the case differently. Id.

Nelson challenges three aspects of the Commissioner's decision: (1) the weight given to his treating physician's opinion; (2) the credibility assessed to his own testimony; and (3) the hypothetical posed to the vocational expert. The Court will address each aspect in turn.

**A.**     **Treating Physician**

First, Nelson argues that the ALJ erroneously gave little weight to his treating physician's opinion of his residual functional capacity. But substantial evidence supports the ALJ's decision to do so.

An ALJ must generally give a treating physician's opinion "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010) (citation and quotation marks omitted). The treating physician's opinion, however, "does not automatically control, since the record must be evaluated as a whole." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005). As a result, the ALJ "may discount or disregard" the opinion "where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id.

Nelson's treating physician, Dr. David Kearn, made several statements about his residual functional capacity. (Admin. R. at 19.) In particular, Dr. Kearn opined that Nelson's "overall presentation warranted a Global Assessment of Functioning score in the range of 45 to 50;" that Nelson's impairments barred him from performing various activities at certain intervals in an eight-hour workday, including "being punctual within customary tolerances[] and sustaining an ordinary routine without special supervision," "making simple work-related decisions and tolerating normal levels of stress," and "understanding and remembering short and simple instructions;" and that Nelson "would

5

need unscheduled breaks" and "is likely to be absent from work more than three days per month as a result." (Id.; see also id. at 723-25.)

The ALJ gave "little evidentiary weight" to Dr. Kearn's opinion because it was not "generally consistent with the evidence taken as a whole." (Id. at 19.) The ALJ then proceeded to list fourteen pieces of other medical evidence in the record—both from treating and consulting sources—that contradicted Dr. Kearn's opinion. (Id. at 19-22.) Among that evidence are reports from previous clinic and hospital visits from 2006 to 2012 that describe Nelson as having "last worked in January 2011" "in landscaping and snow removal," appeared "normal" and "bright," "oriented in all spheres with normal affect and mood," "not been bothered at all by feeling down," and warranted Global Assessment of Functioning scores of 57, 59, and 65. (Id.; see also id. at 483-84, 547-66, 618-50, 699, 844-59, 1337-52, 1507-19.) Further evidence is a report from an examining psychologist, Dr. Dustin Warner, who stated that Nelson, among other things, was "able to arrive on time for the evaluation," "keeping regular hours," "spending time with others and getting along well with them," "alert and oriented to person, place and time," "clear and goal directed;" had "intact" "thought processes" and "recent and remote memory;" and warranted a Global Assessment of Functioning score of 60. (Id. at 20; see also id. at 533-38.)

Having reviewed the record as a whole, the Court concludes that Dr. Kearn's opinion conflicts with other substantial medical evidence. As the ALJ thoroughly detailed in his decision, the other evidence shows that Nelson could arrive on time, maintain an ordinary schedule, think through and make simple and stressful decisions,

6

and remember instructions in the short term, as well as having frequently received Global Assessment of Functioning scores above 50. In addition, Dr. Kearn's opinion appears to be inconsistent with his examination notes, which characterize Nelson as cooperative, alert, and oriented, and having intact memory, normal speech, and clear and relevant thoughts and perceptions, (see id. at 738); this inconsistency undermines the reliability of Dr. Kearn's opinion. See Davidson v. Astrue, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.").

Thus, the ALJ did not err in giving Dr. Kearn's opinion little weight.

**B.    Credibility**

Second, Nelson argues that the ALJ improperly discredited his testimony of disabling pain. Substantial evidence, however, supports the ALJ's decision to do so.

An ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." Goff, 421 F.3d at 792 (citation and quotation marks omitted). But the ALJ "may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole." Id. In doing so, the ALJ "must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the [claimant's] complaints." Eichelberger, 390 F.3d at 590. If the ALJ's credibility determinations "are supported by good reasons and substantial evidence," the Court defers to those determinations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).

7

When assessing the credibility of a claimant's allegations of disabling pain, the ALJ must consider several factors: the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions. Medhaug v. Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ need not explicitly discuss each Polaski factor; instead, he "only need acknowledge and consider those factors before discounting a claimant's subjective complaints." Eichelberger, 390 F.3d at 590.

Though the ALJ here did not explicitly discuss each Polaski factor—as he was not required to do—he recognized the factors, considered them along with the evidence in the record as a whole, and expressly found that Nelson's allegations about the "intensity, persistence and functionally limiting effects" of pain were "not generally credible" because they were "not generally consistent with the evidence taken as a whole." (Admin. R. at 17-22.) In making that finding, the ALJ gave several reasons.

The ALJ principally looked to the medical evidence that also called into question the reliability of Dr. Kearn's opinion. As discussed above, that evidence is substantiated by the record as a whole. The evidence shows that Nelson "retained sufficient mental capacity to concentrate on, understand and remember routine repetitive instructions;" had the "ability to carry out routine repetitive tasks;" "retained the ability to handle brief and superficial contact with coworkers and the public;" and had the "ability to tolerate and respond appropriately to stress in the workplace [that] would be adequate to handle the routine stresses of a routine repetitive work setting." (Id. at 18-22.) This evidence

bolsters the ALJ's residual functional capacity assessment and contradicts Nelson's allegations of disabling pain.

Beyond that evidence, the ALJ gave "some evidentiary weight" to the opinion of a neurologist, Dr. Irfan Altafullah, which further counters Nelson's allegations of disabling pain. (Id. at 22.) Dr. Altafullah explained that while Nelson "might have been unable to perform physically demanding activities for 'a week or so' following" the accident in 2011, he "did not require any formal restrictions or limitations in the future . . . given the minor nature of the injuries" that he sustained. (Id.; see also id. at 1438-47.)

What is more, the ALJ emphasized inconsistencies in the record about Nelson's drug use, all of which weaken Nelson's overall credibility. For example, Nelson represented to Dr. Warner that he had never used cocaine, but then told Dr. Warner that he once attempted suicide by overdosing on cocaine. (Id. at 22; see also id. at 549.) Likewise, Nelson told Dr. Warner that he had last used alcohol in 2000, but then said that he did not stop drinking alcohol until March 2011. (Id. at 22.) The ALJ determined that those discrepancies "adversely affect" Nelson's credibility, including his allegations of disabling pain (id. at 22), and that determination has ample support in the record.

Nelson objects to the ALJ's reference to the evidence that he can carry on common daily activities, such as watching television, doing housework, and going shopping. (See id. at 16-17.) It appears to be an unsettled question in the Eighth Circuit whether evidence of daily activities is inconsistent with allegations of disabling pain. Compare Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are

inconsistent with subjective complaints of disabling pain."), with Reed v. Barnhart, 399 F.3d 917, 923-24 (8th Cir. 2005) ([T]he ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."). Because the record contains many inconsistencies as to Nelson's alleged disability, the ALJ did not err. See Halverson, 600 F.3d at 933.

Nelson also insists that the ALJ inadequately developed the record concerning his borderline intellectual functioning. He points to the report of psychologist Kyle Harvison, which indicates that he "currently performs at a fifth grade equivalency or below on measures of reading, spelling, and math computation skills." (Admin. R. at 860-64, 1098-99.) To the contrary, the ALJ did find that Nelson had a severe disorder of borderline intellectual functioning and accounted for that finding in his residual functional capacity assessment. (Id. at 17.)

"As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." Perkins v. Astrue, 648 F.3d 892, 901 (8th Cir. 2011). The medical evidence in the record undoubtedly shows that Nelson is suffering headaches and pain. But the same evidence, coupled with various inconsistencies in the record, also shows that the pain is not severe enough to be disabling and to prevent Nelson from working at all. The ALJ therefore appropriately discredited Nelson's testimony of disabling pain.

**C.    Hypothetical**

Finally, Nelson argues that the ALJ wrongly posed a hypothetical to the vocational expert that omitted his alleged headaches and pain. Here, too, substantial evidence

supports the ALJ's decision to do so. A sufficient hypothetical to a vocational expert includes "impairments supported by substantial evidence in the record and accepted as true" but excludes "any alleged impairments that [the ALJ] has properly rejected as untrue or unsubstantiated." Perkins v. Astrue, 648 F.3d 892, 901-02 (8th Cir. 2011) (citation and quotation marks omitted). Substantial evidence supports the ALJ's findings on Nelson's allegations of disabling pain and his residual functional capacity. So in posing a hypothetical to the vocational expert that reflected those findings, the ALJ rightly described only those impairments supported by substantial evidence.

**CONCLUSION**

Substantial evidence supports the Commissioner's decision to deny Nelson's application for social-security disability benefits. Accordingly, **IT IS HEREBY ORDERED** that:

1. Nelson's Motion for Summary Judgment (Docket No. 16) is **DENIED**;

2. The Commissioner's Motion for Summary Judgment (Docket No. 19) is **GRANTED**; and

3. The Commissioner's decision denying Nelson's application for disability insurance benefits and supplemental security income is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: April 24, 2015                     *s/ Paul A. Magnuson*
                                                  Paul A. Magnuson
                                                  United States District Court Judge